IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEMTOV MICHTAVI, | : | 1:10-cv-1399 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| WILLIAM SCISM, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**September 17, 2014**

Presently pending before this Court in this matter is Defendants' Motion for Summary Judgment (Doc. 139) filed on December 2, 2013.  The Motion has been fully briefed by the parties and is therefore ripe for our review.  For the reasons that follow, the Defendants' Motion for Summary Judgment shall be granted.[1]

## I.     BACKGROUND

*Pro se* Plaintiff Shemtov Michtavi ("Michatvi") is a prisoner formerly incarcerated at the Low Security Correctional Institution at Allenwood, Pennsylvania ("LSCI-Allenwood").  Michtavi filed this *Bivens*[2] action against W.

---

[1] The *pro se* Plaintiff has filed several additional motions (Docs. 148, 153, 157, 161) that shall be denied either for lack of merit or mootness.

[2] *Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Scism, retired Warden; D. Spotts, retired Assistant Health Services Administrator ("AHSA"); J.L. Norwood, Northeast Regional Director; H. Watts, National Inmate Appeals Administrator; and W. Cavanaugh (collectively "Defendants") claiming that they were deliberately indifferent to his dental needs during his incarceration at LSCI-Allenwood.  Defendants have filed the instant Motion for Summary Judgment (Doc. 139) asserting that they are entitled to summary judgment on Michtavi's claim.

As noted above, the Defendants filed their Motion on December 2, 2013, along with a brief in support and Statement of Material Facts, as required by Local Rule 56.1.  (Docs. 139, 140 and 141).  A few months prior to the filing of the Defendants' Motion, Michtavi had been transferred to a prison in Israel, pursuant to the International Prisoner Transfer Program.  Given the circumstances, we afforded Michtavi with ample time to prepare his opposition to the Defendants' Motion, and his brief was ultimately filed on April 30, 2014.  (Doc. 152).  Notably, Michtavi did not file a response to the Defendants' Statement of Material Facts, as required by Local Rule 56.1.[3]  A reply brief was filed by the Defendants on May

---

[3] That Local Rule provides that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts, responding to the numbered paragraphs set forth in the [movant's statement of material facts], as to which it si contended that there exists a genuine issue to be tried.  All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

13, 2014, making the matter ripe for the Court's consideration.  (Doc. 155).

## II.     FACTS

The following facts are drawn from the Defendants' Statement of Material Facts.[4]  (Doc. 141).  This action arises out of Michtavi's claims that prison officials were deliberately indifferent to his serious dental needs.  Michtavi was treated by Dr. Cavanaugh, the dentist at LSCI-Allenwood and Commander with the Public Health Service, beginning in 2005 until Michtavi left LSCI-Allenwood pursuant to his transfer to an Israeli prison.  (SMF[5] ¶ 24).  Michtavi first presented to Dr. Cavanaugh in August of 2005, for complaints related to a broken bridge.  (SMF ¶ 26).  It is undisputed that Dr. Cavanaugh saw Michtavi on multiple occasions from the fall of 2005 until 2008, and then again in 2010.  On several occasions, Dr. Cavanaugh pulled teeth or provided a crown to treat Michtavi's dental problems.  (SMF ¶¶27-32).  Thereafter, in 2012, Michtavi was again seen by Dr. Cavanaugh for a series of treatments that resulted in upper and lower dentures being fitted and provided for Michtavi.  (SMF ¶¶ 34-42).

---

[4] As noted above, Michtavi did not file a counterstatement of material facts, thus, pursuant to Local Rule 56.1, the Defendants' factual statement is deemed admitted.  We do note, however, that Plaintiff asserts within his brief that he disputes certain facts as set forth by the Defendants, but provides no support for the areas he disputes.

[5] The designation "SMF" refers to the Defendants' Statement of Material Facts.  (Doc. 141).

At all times relevant to this lawsuit, Defendant Scism was the Warden of LSCI-Allenwood. His job duties included general oversight of the running of the institution and administrative direction over the associate wardens and institutional department heads. (SMF ¶¶ 1-2). In his capacity as Warden, Scism denied Michtavi's administrative remedies related to dental care in 2009 and 2010, (SMF ¶¶6-7), however Scism himself does not provide medical care to inmates, nor does he have input into clinical decisions concerning inmate medical care. (SMF ¶¶ 3-4).

Defendant AHSA Spotts was responsible for managing and directing the activities of a multi-disciplinary team of health care professionals who are responsible for medical, dental, and allied health services, such as pharmacy, lab and x-ray to the inmate population. AHSA Spotts was solely an administrator at the institution - she did not provide medical or treatment to inmates. (SMF ¶¶ 10-14).

Defendant Norwood is the Northeast Regional Director for the Bureau of Prisons. In his capacity as Regional Director, Defendant Norwood denied Michtavi's appeals of his administrative remedies concerning his dental care at LSCI-Allenwood. (SMF ¶¶ 18-19). Likewaise, Defendant Watts, National Inmate Appeals Administrator, denied Michtavi's appeal of his administrative remedies at

the Central Office level.  (SMF ¶¶ 21-22).

## III.   LEGAL STANDARD

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. Civ. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their

factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## IV. DISCUSSION

In this case, the gravamen of Michtavi's claim is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his dental needs. Michtavi faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Michtavi must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must

> have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical/dental care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Michtavi is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury,

*Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer,* 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". *Gindraw v. Dendler*, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently

8

rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; *see, e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections,* 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan,* 182 F. App'x 103 (3d Cir. 2006); *Bronson v. White,* No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); *Gindraw v. Dendler,* 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such

second-guessing is not the province of the courts.

*James,* 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris,* 36 Fed. Appx. 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan,* 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Sherrer v. Stephen,* 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); *Kayser v. Caspari,* 16 F.3d

280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); *Czajka v. Caspari,* 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); *Lair v. Oglesby,* 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler,* 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

      Here, it is undisputed that Dr. Cavanaugh provided dental care and treatment

to Plaintiff from 2006 until his transfer from LSCI-Allenwood.  What is evident from the contents of Michtavi's grievance forms as well has his submissions throughout the course of this litigation is that Michtavi disagreed with the course of treatment provided by Dr. Cavanaugh.  However, Dr. Cavanaugh's treatment notes do not indicate that any of Michtavi's dental issues were emergent or that Michtavi was complaining of severe pain.  Michtavi does not dispute this.  Rather, Michtavi contends that his requests for dentures were being denied because the institution was not fully staffed for dental needs, thus establishing deliberate indifference. While the responses to Michtavi's administrative grievances do note that LSCI-Allenwood was seeking another dentist to fill an open position at the institution, it is clear that all emergent, or serious, dental needs were being treated in the usual method, which involves inmates presenting at sick call.  In fact, within the responses to Michtavi's grievances, he was directed to present himself for sick call if he was suffering from pain or needed emergent care.  Based on the foregoing, we find that no material disputes of fact exist as to Dr. Cavanaugh's care of Michtavi pertaining to his dental needs, and shall grant summary judgment in favor of Dr. Cavanaugh on this claim.[6]

---

[6] For the sake of completeness and context, it is necessary for us to explain that, at a point in this litigation, we endeavored to bring the matter to an amicable conclusion by requesting, through the aid of the Assistant United States Attorney handling this matter, that Dr. Cavanaugh expedite the process of providing Michtavi with the dentures he was requesting. Michtavi's

Additionally, and of particular importance here, supervisory officials such as Warden Scism, AHSA Spotts, Regional Director Norwood and Appeals Administrator Watts can only be held liable for an civil rights violation if they are shown to "have personal involvement in the alleged wrong." *Sutton v. Rasheed*, 323 F. 3d 236, 249 (3d Cir. 2003) (quoting *Rode v. Dellarciprete*, 845 F. 2d 1195, 1207 (3d Cir. 1988)).  The personal involvement of a supervisory official is established either by "allegations of personal direction or of actual knowledge and acquiescence" to the violation of subservient officials.  *Rode*, 845 F. 2d at 1207.  Moreover, it is well-settled that if a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  *See Rode* at 1208.  There is simply no evidence in this record demonstrating that Defendants Scism, Spotts, Norwood or Watts had any personal involvement in the conduct Michtavi alleges that could give rise to liability.

---

litigious nature is well known to us, but we certainly do not count that against him. Indeed, in the form of the "squeaky wheel gets the grease," we sought to implore the prison to provide Michtavi with the very relief he seemed to ultimately desire - dentures.  Those dentures were made, fitted and provided.  They were even fixed on multiple occasions after Michtavi dropped and broke them.  Despite being provided the ultimate relief sought and being transferred to a prison on another continent, Michtavi continues to litigate this matter.  However, what is more than evident to this Court, given our intimate familiarity with this matter and thorough review of the pleadings, submissions, and factual record in this matter is that Michtavi's constitutional rights were not, at any point, violated by Dr. Cavanaugh or any of the officials at LSCI-Allenwood.  He was provided with a consistent and thorough dental care, and this lawsuit is nothing more than a manifestation of his disagreement with the realities of prison life.

Further, because we have found that Michtavi was not subject to deliberately indifferent treatment to his dental needs by Dr. Cavanaugh, it necessary follows these supervisory Defendants have also not been deliberately indifferent to Michtavi's needs, and could not have been even had they been personally involved.

## V.   CONCLUSION

For the reasons articulated herein, the Court shall grant the Defendants' Motion for Summary Judgment.  An appropriate Order shall follow.